**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

NANCY NGUYEN, *on behalf of*
*herself and all others similarly situated*,

                    Plaintiff,

    v.

DRUNK ELEPHANT, LLC,

                    Defendant.
_____

Case No.:

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

      Plaintiff, NANCY NGUYEN (hereinafter, "Plaintiff"), on behalf of herself and all others similarly situated, by and through her undersigned counsel, hereby file this Class Action Complaint against Defendant, DRUNK ELEPHANT, LLC ("Defendant") and alleges the following upon her own knowledge, or where they lack personal knowledge, upon information and belief, including knowledge and the investigation of her counsel:

## NATURE OF THE ACTION

      1.    This is a consumer protection class action arising out of Defendant's deceptive practices in the marketing, advertising, and promotion of its Shaba Complex™ Eye Serum product in the 15mL bottles (hereinafter, the "Product," as depicted in **Exhibit A**).

1

2. Through an extensive, widespread, comprehensive, and uniform nationwide marketing campaign, Defendant claims that its Product changes the structure and function of a person's skin and has medical benefits. Defendant makes numerous specific claims about the Product in general—as well as claims about the efficacy of its ingredients—and those claims all mislead consumers into believing that the Product changes the structure and function of a person's skin and/or medical benefits. Defendant's claims however, are false, misleading, and reasonably likely to deceive the public because there is nothing in the Product that could actually deliver these promises.

3. Defendant makes essentially the same claim throughout its marketing materials. Each person who purchased the Product has been exposed to Defendant's misleading advertising message multiple times. A primary reason a consumer would purchase the Product is to obtain these advertised medical benefits.

4. As a result of the misleading marketing campaign, Defendant has caused Plaintiff and other consumers to purchase a product that does not perform as represented. Plaintiff and other similarly situated consumers have been harmed in the full amount they paid for the Product because the Product is worthless.

5. Plaintiff brings this action on behalf of herself and all other similarly situated consumers nationwide, who, from the applicable limitations period up to and including the present (the "Class Period"), purchased the Product. Plaintiff seeks to end Defendant's dissemination of this false and misleading advertising message, correct the false and misleading perception it has created in the minds of consumers, and to obtain redress for those who have purchased the Shaba Complex™ Eye Serum.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(d). This is a putative class action whereby: (i) the proposed class consists of over 100 class members; (ii) at least some of the proposed class members have a different citizenship from Defendant; and (iii) the amount in controversy exceeds the sum of value of $5,000,000.00, excluding interest and costs.

7. The Court has jurisdiction over the federal claims alleged herein pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

8. The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the United States Constitution.

9. Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

10. This Court has personal jurisdiction over Defendant because its Product is advertised, marketed, distributed, and sold throughout New York State; Defendant engaged in the wrongdoing alleged in this Complaint throughout the United States, including in New York State; Defendant is authorized to do business in New York State; and Defendant has sufficient minimum contacts with New York and/or otherwise have intentionally availed themselves of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant is engaged in substantial and not isolated activity within New York State.

11. Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391(a) and (b), because a substantial part of the events giving rise to Plaintiff NGUYEN's claims occurred in

this District and Defendant is subject to personal jurisdiction in this District. Plaintiff NGUYEN resides in this district.

## PARTIES

*Plaintiff*

12.   Plaintiff NANCY NGUYEN is a citizen of the State of New York and resides in Westchester County. On April 12, 2017, Plaintiff NGUYEN purchased Shaba Complex™ Eye Serum from DrunkElephant.com and Plaintiff was exposed to and saw Defendant's skin-altering and medical claims on DrunkElephant.com. Plaintiff's purchase was made in reliance on Defendant's representations on DrunkElephant.com, including those representations in the Product's description. Plaintiff NGUYEN purchased the Product for personal consumption on DrunkElephant.com. The retail purchase price was approximately $73.00 for one 15 mL container of the Product.

13.   Plaintiff NGUYEN purchased the Product believing it would provide the advertised skin-altering and medical benefits and she used the Product as directed. However, the Product did not provide the advertised benefits. As a result of her purchase, Plaintiff NGUYEN suffered injury in fact and lost money. Had Plaintiff NGUYEN known the truth about Defendant's misrepresentations and omissions, she would not have been willing to pay $73.00 for the Product because it does not work as advertised. Plaintiff NGUYEN is not claiming physical harm or seeking the recovery of personal injury damages.

*Defendant*

14.   Defendant DRUNK ELEPHANT, LLC is a business corporation organized under the laws of the state of Texas, with its principal place of business at 1600 West 38th Street, Suite 424, Austin, Texas 78731. Defendant's address for service of process is located at Corporation

Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808. Defendant develops and manufactured cosmetic products for consumer and professional markets. It provides cosmetic products throughout the United States through a network of suppliers. Defendant manufactures, markets, and sells the Drunk Elephant cosmetics brand which includes skin care and makeup products.

15. Defendant sells the Product online at large online retail stores such Sephora.com, DrunkElephant.com, and Amazon.com. Defendant also sells the Product to brick-and-mortar stores, such as Sephora. The Product is available nationwide.

## FACTUAL ALLEGATIONS

**Defendant's False and Deceptive Online Advertising of the Product**

16. Defendant made its skin altering and medical claims across a variety of media. Defendant makes its medical claims on the product page of large online stores such as Sephora.com where the Product can be directly ordered, as well as on Defendant's website.

17. On Defendant's website, where Plaintiff NGUYEN purchased the Product, Defendant makes the following claim under the ingredients tab: "**black tea ferment:** this compound helps **smooth skin roughness**, improve radiance and **decrease glycation** . . . **leontopodium alpinum (edelweiss) meristem cell culture:** rich in leontopodic acids with powerful antioxidant properties, helps to combat visible signs of aging like wrinkles and **loss of firmness**. **niacinamide:** a potent skin-identical, "**cell-communicating**" ingredient that improves skin's elastic feel, helps diminish discoloration and revises a healthy tone and **texture** . . . **sodium hyaluronate crosspolymer:** has a smaller molecular weight than hyaluronic acid, and is able to deeply penetrate skin delivering excellent hydration and reducing the appearance of fine

5

lines and wrinkles, while **promoting firmness**"[2] (emphasis added). An image of the ingredients tab is below:

> Description    How to use    **Ingredients**    Video
>
> .5 OZ
>
> - **black tea ferment** this compound helps smooth skin roughness, improve radiance and decrease glycation, a process that has been shown to age the appearance of skin.
>
> - **copper peptides:** with antioxidant properties, help to reduce the appearance of wrinkles and promote a more elastic feel to the skin.
>
> - **leontopodium alpinum (edelweiss) meristem cell culture:** rich in leontopodic acids with powerful antioxidant properties, helps to combat visible signs of aging like wrinkles and loss of firmness.
>
> - **niacinamide:** a potent skin-identical, "cell-communicating" ingredient that improves skin's elastic feel, helps diminish discoloration and revives a healthy tone and texture.
>
> - **ubiquinone:** a potent antioxidant that easily penetrates and helps to ward off environmental aggressors and deter premature signs of aging.
>
> - **hesperidin methyl chalcone:** a derivative of the bioflavonoid that is found in citrus fruits to help reduce the appearance of dark circles under the eyes.
>
> - **hippophae rhamnoides (sea buckthorn) oil:** rich in unsaturated fatty acids, beta carotene, pro-vitamin A and vitamin E, this oil easily absorbs and helps defend from free-radicals; possesses soothing properties to relieve redness.
>
> - **sodium hyaluronate crosspolymer:** has a smaller molecular weight than hyaluronic acid, and is able to deeply penetrate skin delivering excellent hydration and reducing the appearance of fine lines and wrinkles, while promoting firmness.

18.     On the Product page Sephora.com, where the Product can also be ordered directly, Defendant makes the following claim under the ingredients tab: "Copper Peptides: Reduce the appearance of wrinkles and promote a more **elastic feel to the skin** while providing antioxidant properties. Edelweiss Stem Cell Culture: Helps to combat visible signs of aging like wrinkles and **loss of firmness**, and are rich in leontopodic acids with powerful antioxidant

---

[2] https://www.drunkelephant.com/collections/shop/products/shaba (last accessed 1/11/18).

properties. Black Tea Ferment: **Smooths the look of roughness**, improves radiance, and helps skin appear younger. . . ."[3] (emphasis added). An image of this description is below (emphasis added):



19.     Customers were exposed to essentially the same claims whether they bought their Product from Sephora.com, from Defendant's website DrunkElephant.com, or from any other online retailer. The ingredients of the Product and its false skin-altering and medical claims are prominently displayed on Defendant's website, just as they are on Sephora.com.

**Defendant's Medical Claims Are False and Misleading**

20.     Defendant falsely claims that the Product refines skin texture, smooth roughness, or in essence changes the structure and function of the skin. In truth, the Product does not actually provide these promised benefits.

21.     Nothing contained in the Product can cause these benefits to occur. Thus, Defendant's medical claims are false, misleading and reasonably likely to deceive the public.

---

[3] https://www.sephora.com/product/shaba-complex-eye-serum-P419223?skuId=1955640&om_mmc=ppc-GG_977808664_48559772596_pla-293946777986_1955640_231276319803_9004069_c&country_switch=us&lang=en&gclid=Cj0KCQiAs9zSBRC5ARIsAFMtUXHTDs_QxSPb1OJRMyQspcG5MwXvLeUoyqLyr1cfv87ZK5yWHDNI29EaApGMEALw_wcB&gclsrc=aw.ds (last accessed 1/11/18).

22. Additionally, Defendant's medical claims are essentially drug claims because Defendant claims that the Product is intended to physiologically affect a consumer's skin. *See* FDCA § 201(g)(1) (defining drugs to be "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease" and "articles (other than food) intended to affect the structure or any function of the body of man or other animals."). Even if Defendant's medical claims were true, the Product would be improperly labeled because the Product promises to change the structure of a consumer's skin.

23. As the manufacturers, sellers, and/or distributors of the Product, Defendant possesses specialized knowledge regarding the content and effects of the ingredients contained in the Product.

24. Defendant knew or should have known, but failed to disclose that the Product does not cause physiologically alter skin.

25. Defendant's medical claims are false, misleading, unlawful, and reasonably likely to deceive the public because nothing in the Product is an effective drug which leads to the physiological changes in a consumer's skin.

**Plaintiff and the Class Were Injured as a Result of Defendant's Deceptive Practices**

26. As a result of the Defendant's false skin-altering and medical claims, Plaintiff and the Class members have been injured in their purchase of the Product. Plaintiff and the Class members have been deceived into paying substantial amounts for Product that do not deliver the promised skin-altering, or medical benefits.

27. Defendant's claim that the Product has skin-altering and medical claims causes consumers to make the association between these claims and the benefits of the Product. Plaintiff and Class members relied on the Defendant's Product representations and were deprived of the

benefit of their bargains. Accordingly, the Plaintiff and Class members are entitled to a full refund of the Products.

28.     Alternatively, assuming the court finds that the Product had value such that a full refund is not appropriate, Plaintiff and Class members should be partially reimbursed the price premium that they paid for the Product based on the false claims.

29.     Based on the purported skin-altering and medical claims conveyed in its marketing and advertising campaign, Defendant is able to price the Product at a premium over other skin care products that do not claim to be a skin-altering or medical product.

| **Brand** | **Product** | **Quantity** | **Retail Price** |
|---|---|---|---|
| **Drunk Elephant** | **Shaba Complex™ Eye Serum** | **15 mL** | **$60.00[8]** |
| Glossier | Super Bounce | 15 mL | $28.00[9] |
| Ulta | Youthful Eye Serum | 15 mL | $23.99[10] |
| Garnier | Miracle Anti-Fatigue Eye Gel-Cream | 15 mL | $16.99[11] |

30.     The products are all the same size of 15 mL. Defendant's Product is sold for twice as much as other comparable eye creams.

31.     Even though the Product does not cause physiological changes in a consumer's skin, consumers pay a premium over other similarly effective skin cleansers because of the skin-altering and medical claims. Typically, skin cleansers such as the comparison products above retail for approximately half as much as the Product. The only reason Plaintiff and consumers

---

[8] http://www.boscia.com/shop/product_detail.php?products_id=146 (last accessed 10/18/17).
[9] https://www.glossier.com/products/super-bounce (last accessed 11/8/18).
[10] http://www.ulta.com/youthful-eye-serum?productId=xlsImpprod12041937 (last accessed 1/8/18).
[11] http://www.garnierusa.com/products/skincare/miracle-anti-fatigue/night-moisturizers/miracle-anti-fatigue-eye-gel-cream.aspx (last accessed 1/8/18).

would pay the premium price of $60 for the Product is to obtain the medical benefits, which the Product does not actually provide.

32. As a result of the Defendant's deceptive representations, consumers – including Plaintiff and members of the proposed Class – have purchased the Product at a premium in reliance of such representations. They have paid this price premium for Product that did not provide the benefits as advertised, so consumers deserve refunds based on the failure of the Product to work as advertised.

33. As a result of Defendant's deceptive medical, Plaintiff and other members of the proposed Class have purchased the Product that does not perform as advertised. Defendant has reaped enormous profits from its false, misleading and deceptive marketing and sale of the Product. Plaintiff and members of the proposed Class have been deceived and/misled by Defendant's deceptive medical claims. Defendant's medical claims were a material factor in influencing Plaintiff's decision to purchase and use the Product.

## CLASS ACTION ALLEGATIONS

34. Plaintiff NGUYEN brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons or entities in the United States who made retail purchases of the Product during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the Nationwide Class").

35. In the alternative, Plaintiff NGUYEN seeks to represent:

> All persons who made retail purchase of the Product in New York during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the New York Class").

36. The proposed Classes exclude current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant,

Defendant's legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

37. Class members are so numerous that joinder of all Class members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through the appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Classes. Other members of the Classes may be identified from records maintained by Defendant and may be notified of the pendency of this action by mail, or by advertisement, using the form of notice similar to that customarily used in class actions such as this.

38. Plaintiff's claims are typical of the claims Class members as they all are similarly affected by Defendant's wrongful conduct.

39. Plaintiff will fairly and adequately protect the interests of the Class members in that Plaintiff has no interests antagonistic to them. Plaintiff has retained experienced and competent counsel.

40. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for the Class members to individually seek redress for the wrongful conduct alleged herein.

41. Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual members. These include:

42. Whether Defendant labeled, packaged, marketed, advertised and/or sold the Product to Plaintiff and Class members using false, misleading and/or deceptive packaging and labeling;

43.     Whether Defendant's actions constitute violations of 21 U.S.C. § 343(d);

44.     Whether Defendant omitted and/or misrepresented material facts in connection with the labeling, packaging, marketing, advertising and/or sale of its Product;

45.     Whether Defendant's labeling, packaging, marketing, advertising and/or selling of its Product constituted an unfair, unlawful or fraudulent practice;

46.     Whether the packaging of the Product during the class period contained unlawful non-functional slack-fill;

47.     Whether, and to what extent, injunctive relief should be imposed on Defendant to prevent future misconduct;

48.     Whether Class members have sustained damages as a result of Defendant's wrongful conduct;

49.     Whether Defendant purposely chose non-transparent Product packaging so that Plaintiff and Class members would not be able to see the amount of slack-fill contained in the Product;

50.     The appropriate measure of damages and/or other relief.

51.     The membership of the Classes is readily definable, and prosecution of this action as a class action will reduce the possibility of repetitious litigation. Plaintiff knows of no difficulty which will be encountered in the management of this litigation that would preclude its maintenance as a class action.

52.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual Class member are too small to make it economically feasible for an individual Class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this

forum. Furthermore, the adjudication of this controversy through a class action will prevent the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

53. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

54. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Classes predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

55. The prosecution of separate actions by individual Class members would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all Class members, although certain Class members are not parties to such actions.

56. Defendant's conduct is generally applicable to the Classes as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Classes as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Classes as a whole appropriate.

## CAUSES OF ACTION

### COUNT I

### INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

**(Brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection law of other states and the District of Columbia to the extent New York law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

57. Plaintiff NGUYEN realleges and incorporates herein by reference all allegations contained above as if fully set forth herein and further alleges as follows:

58. Plaintiff NGUYEN brings this claim individually and on behalf of the other members of the Class for an injunction and damages for violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law § 349 ("NY GBL §349").

59. Defendant's business acts and practices and/or omissions alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect the consuming public from those who engage in unconscionable, deceptive or unfair acts or practices in the conduct of any business, trade or commerce.

60. The practices of Defendant described throughout this Complaint, were specifically directed to consumers and violate the NY GBL § 349 for, inter alia, one or more of the following reasons:

   a. Defendant engaged in deceptive, unfair and unconscionable commercial practices in failing to reveal material facts and information about the Product, which did, or tended to, mislead Plaintiff NGUYEN and the Class about facts that could not reasonably be known by them;

  b. Defendant failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

  c. Defendant caused Plaintiff NGUYEN and the Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

  d. Defendant failed to reveal material facts to Plaintiff NGUYEN and the Class with the intent that Plaintiff NGUYEN and the Class members rely upon the omission;

  e. Defendant made material representations and statements of fact to Plaintiff NGUYEN and the Class that resulted in Plaintiff NGUYEN and the Class reasonably believing the represented or suggested state of affairs to be other than what they actually were;

  f. Defendant intended that Plaintiff NGUYEN and the members of the Class rely on its misrepresentations and omissions, so that Plaintiff NGUYEN and Class members would purchase the Product; and

  g. Defendant knowingly and falsely represented and advertised that the Product was fit to be used for the purpose for which it was intended, to physiologically change a person's when Defendant knew that the Product did not work as promised.

  61. Under all of the circumstances, Defendant's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

  62. Defendant's actions impact the public interest because Plaintiff NGUYEN and members of the Class were injured in exactly the same way as thousands of others purchasing the Product as a result of and pursuant to Defendant's generalized course of deception.

63. By committing the acts alleged in this Complaint, Defendant has misled Plaintiff NGUYEN and the Class into purchasing the Product, in part or in whole, due to an erroneous belief that the Product will physiologically alter a consumer's skin. This is a deceptive business practice that violates NY GBL § 349.

64. Defendant's medical claims misled Plaintiff NGUYEN, and are likely in the future to mislead reasonable consumers. Had Plaintiff NGUYEN and members of the Class known of the true facts about the Product's failure to work as promised, they would not have purchased the Product and/or paid substantially less for another product.

65. The foregoing deceptive acts, omissions and practices were directed at consumers.

66. The foregoing deceptive acts, omissions and practices set forth in connection with Defendant's violations of NY GBL § 349 proximately caused Plaintiff NGUYEN and other members of the Classes to suffer actual damages in the form of, inter alia, some or all monies spent to purchase the Product, and are entitled to recover such damages, injunctive relief, together with equitable and declaratory relief, appropriate damages, including punitive damages, attorneys' fees and costs.

## COUNT II

## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §§ 350 AND 350-a(1)

## (FALSE ADVERTISING)

**(Brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection law of other states and the District of Columbia to the extent New York law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

67. Plaintiff NGUYEN realleges and incorporates herein by reference all allegations contained above as if fully set forth herein and further alleges as follows:

68. Plaintiff NGUYEN brings this claim individually and on behalf of the other members of the New York Class for violations of New York's False Advertising Law, New York General Business Law § 350 ("NY GBL § 350").

69. NY GBL § 350 provides that false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state are unlawful.

70. NY GBL § 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect."

71. Any person who has been injured by reason of any violation of the NY GBL may bring an action in her own name to enjoin unlawful act or practice, an action to recover her actual damages or five hundred dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to ten thousand dollars, if the court finds Defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

72. As fully alleged above, by advertising, marketing, distributing, labeling and selling the Product to Plaintiff NGUYEN and other members of the Class, Defendant engaged in, and continues to engage in, false advertising.

73. Defendant engaged in false advertising by advertising, marketing, distributing and selling the Product as fit to be used for the purpose for which it was intended to physiologically change one's skin, when Defendant knew that the Product did not work as promised.

74. Defendant's conduct was directed at consumers.

75. Also, justifiable reliance is not required for a NY GBL § 350 claim. See Koch v. Acker, Merrall & Condit Co., 18 N.Y.3d 940, 941 (2012).

76.     Plaintiff NGUYEN and other members of the Class further seeks to enjoin such unlawful deceptive acts and practices as described above.  Each of the members of the Class will be irreparably harmed unless Defendant is enjoined from falsely advertising its Product with the medical claims as described herein.

77.     Plaintiff NGUYEN and other members of the Class suffered a loss as a result of Defendant's false advertising.  Specifically, as a result of Defendant's false advertising, Plaintiff NGUYEN and other Class members suffered monetary losses associated with the purchase of the Product, because they would not have purchased the Product had they known the truth about the Product, or at least would not have purchased the Product at the premium price.

78.     In this regard, Defendant has violated, and continues to violate, NY GBL § 350, which makes false advertising unlawful.  As a direct and proximate result of Defendant's violation of NY GBL § 350 above, Plaintiff NGUYEN and other members of the Class have suffered damages in an amount to be determined at trial.

## COUNT III

## COMMON LAW FRAUD

**(Brought on behalf of the Nationwide Class, in conjunction with the substantively similar common law of other states and the District of Columbia to the extent New York common law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

79.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

80.     Through its product packaging, Defendant intentionally made materially false and misleading representations regarding the quantity of candy that purchasers were actually receiving.

81. Plaintiff and Class members were induced by, and relied upon, Defendant's false and misleading representations and did not know the truth about the Product at the time they purchased it.

82. Defendant knew of its false and misleading representations. Defendant nevertheless continued to promote and encourage customers to purchase the Product in a misleading and deceptive manner, intending that Plaintiff and the Class rely on its misrepresentations.

83. Had Plaintiff and the Class known the actual amount of candy they were receiving, they would not have purchased the Product.

84. Plaintiff and Class members have been injured as a result of Defendant's fraudulent conduct.

85. Defendant is liable to Plaintiff and Class members for damages sustained as a result of Defendant's fraud. In order for Plaintiff and Class members to be made whole, they need to receive a refund compensating them for the shortfall in the Products they purchased.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, seeks judgment against Defendant, as follows:

   a. An Order that this action be maintained as a class action and appointing Plaintiff as representatives of the Class;

   b. An Order appointing the undersigned attorney as class counsel in this action;

   c. Awarding restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to Plaintiff and the proposed Class members;

    d.  Awarding declaratory relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them all money they are required to pay;

    e.  Statutory pre-judgment and post-judgment interest on any amounts;

    f.  Awarding attorneys' fees and costs; and

    g.  Such other relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of herself and the Class, demand a trial by jury on all questions of fact raised by the Complaint.

Dated: February 6, 2018

        Respectfully submitted,

        **LEE LITIGATION GROUP, PLLC**
        C.K. Lee (CL 4086)
        Anne Seelig (AS 3976)

        30 East 39th Street, Second Floor
        New York, NY 10016
        Tel.: 212-465-1188
        Fax: 212-465-1181
        *Attorneys for Plaintiff and the Class*

        By:    /s/ *C.K. Lee*
                C.K. Lee